# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

|  |  |
|---|---|
| C.L. RITTER LUMBER COMPANY, INCORPORATED, | ) ) ) |
| Plaintiff, | ) ) |
| | ) **REPORT AND** |
| | ) **RECOMMENDATION** |
| v. | ) Case No. 1:11cv00019 |
| | ) |
| CONSOLIDATION COAL COMPANY, ISLAND CREEK COAL COMPANY, CNX GAS COMPANY LLC, and CONSOL ENERGY INC., | ) ) ) ) ) |
| Defendants. | ) |

This case comes before the court on Defendants' Motion For A More Definite Statement Pursuant To Federal Rule Of Civil Procedure 12(e) And Defendants' Motions To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(6), (Docket Item No. 8) ("Motions"). The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## I. Facts and Procedural History

The plaintiff, C.L. Ritter Lumber Company, Incorporated, ("Ritter Lumber"), sues Consolidation Coal Company, ("Consolidation"), Island Creek

Coal Company, ("Island Creek"), CNX Gas Company LLC, ("CNX"), and CONSOL Energy Inc., ("Consol"). Ritter Lumber filed this case in Buchanan County Circuit Court, and the defendants removed the case to this court asserting jurisdiction based on diversity of citizenship. The Complaint alleges that Ritter Lumber leased certain mineral rights, including coal and coalbed methane, ("CBM"), rights found in certain Buchanan County tracts of land to Island Creek. Ritter Lumber entered into a lease of its coal rights on certain tracts with Island Creek through an Agreement of Lease dated July 29, 1961. Ritter Lumber also entered into an Indenture Of Lease dated April 16, 1965, and an Indenture of Lease dated July 26, 1967, for additional tracts with Island Creek. (Collectively, "Coal Leases") (Docket Item No.1, Att. 3).

The Coal Leases are virtually identical. In pertinent part, the Coal Leases state:

> Lessor also leases to Lessee, … the right and privilege … to such use, possession, and control of so much of the surface of the leased premises as may reasonably be convenient to Lessee in carrying out its operations hereunder, … together with the right … to dump water or refuse on said premises….

> EXCEPTING AND RESERVING to Lessor: (1) the entire ownership and control of all the leased premises, and the coal, stone, sand, water, timber, oil, gas and other minerals and products therein and thereon, for all purposes (except those hereinbefore expressly set forth as leased to Lessee), including the rights and privilege of using, selling or otherwise disposing of, any of the surface thereof (but the sale of surface shall be subject to all the rights and privileges of Lessee hereunder), and of letting leases to tenants for the purpose of occupying and farming said surface; (2) the right and privilege of searching for, mining and removing coal from any and all veins or seams, or portion or portions thereof, the right and privilege of mining which is not herein expressly let and leased; the right and privilege of making coke …; (3) the right and privilege of growing timber and of

cutting, preparing, using or removing any timber, the right and privilege of using which is not herein expressly let and leased; … (4) the right and privilege of searching for oil, gas or any other minerals or products and removing the same when and wherever found; (5) the right and privilege of draining water, transmitting electrical energy, and transporting coal or coke, or other products of coal, timber, oil, gas or other minerals and products and materials and goods of all other kinds, from the leased premises, or any other lands, over, across or through the leased premises; (6) the right and privilege of using the stone, sand and water in and on the leased premises, of making excavations and sinking or boring slopes, shaft, drifts, tunnels and wells….

Lessee shall locate all dumps for the disposal of refuse and waste material and all settlement basins and all ponds at such locations as may be approved by the Engineer of the Lessor. …

Lessee shall not assign this lease, or any portion thereof, without the consent of Lessor being first had and obtained in writing, and not then without first obtaining and presenting to Lessor a covenant of assumption by the assignee….

Island Creek mined these coal interests through two deep mines, the Beatrice Mine and VP1 Mine. Active mining stopped at the Beatrice Mine in 1986 without removing all coal from the property. Active mining at the VP1 Mine stopped in December 1998 without removing all coal from the property.

By Coalbed Methane Gas Lease dated January 3, 1990, Ritter Lumber leased its CBM rights in these tracts of land to Island Creek. ("CBM Lease") (Docket Item No. 16). In exchange for a one-sixteenth royalty, Ritter Lumber granted Island Creek rights to investigate, explore, prospect, drill and produce CBM, along with the rights to lay pipelines, build tanks, erect power stations, telephone lines and other structures "to produce, save, take care of, treat, transport and own" CBM. The CBM Lease also states:

This Lease shall be, specifically and particularly, subject and subordinate to any and all operations for mining and shipping coal and manufacturing coke and/or any products, or by-products thereof, in, on and from the Leased Premises…. It is understood and agreed that in the joint operation of said premises for coal and methane, the operation of said premises for coal shall be preferred.

(CBM Lease at 15.) An Addendum To Coalbed Methane Gas Lease entered between the parties on the same date increased the royalty payments to Ritter Lumber to 20 percent once Island Creek had recovered the total actual costs of the well plus a 10 percent compounded rate of return.

Without being released from liability, Island Creek assigned all or a portion of its rights under its CBM lease with Ritter Lumber to Oxy USA, Inc. Oxy USA, Inc., then assigned all or a portion of these rights to Appalachian Methane, Inc., and Appalachian Operators, Inc. Appalachian Methane, Inc., and Appalachian Operators, Inc., then assigned all or a portion of these rights to Buchanan Production Company. On January 3, 1993, Ritter Lumber and Buchanan Production Company entered into an Amendment To Coalbed Methane Gas Lease, amending the royalty owed to Ritter Lumber under the CBM Lease to a one-eighth royalty. In 1993, Consol purchased a beneficial ownership in Island Creek and the gas assets that had been developed as Buchanan Production Company. Consol then acted as operator of gas production under these rights. Buchanan Production Company then was merged into CNX, and CNX assumed the liabilities of Buchanan Production Company. CNX then succeeded Consol as the operator of the gas production of these gas interests.

Since before 1993, Consolidation has conducted mining operations at its Buchanan No. 1 Mine on real property located adjacent to, or nearby, the Beatrice Mine and the VP1 Mine. Ritter Lumber alleges that, during the course of its mining operations at its Buchanan No. 1 Mine, Consolidation secretly placed billions of gallons of untreated water produced in its mining operations into the open spaces and voids created by the past mining activities at the Beatrice and VP1 Mines. Ritter Lumber alleges that this untreated water contains pollutants, extremely high levels of total suspended solids, total dissolved solids, chlorides, sodium and other pollutants and contaminants and qualifies as "hazardous substances" as defined in 42 U.S.C. § 9601(14).

Ritter Lumber asserts that it did not know or have reason to know of Consolidation's action until within the five years prior to filing its Complaint. In particular, Ritter Lumber alleges that once it learned of Consolidation's actions, it wrote and demanded that Consolidation take immediate efforts to the preserve the mineability of its remaining coal reserves in the Beatrice and VP1 Mines. Ritter Lumber alleges that Consolidation replied stating that the mines were flooding "naturally" and that the only party acting on the Ritter Lumber properties was Island Creek. Ritter Lumber alleges that this information was false and was provided in an effort to mislead it. Ritter Lumber also alleges that Consolidation and Consol also executed false and fraudulent documents making false representations in an effort to conceal Consolidation's wrongdoing. Ritter Lumber alleges that it relied on these false representations to its detriment by not acting to protect its coal and CBM property rights.

Ritter Lumber asserts that Consolidation's actions have destroyed or substantially reduced the value of its interests in this property and the property's

mineral rights and amount to a willful trespass, waste, unjust enrichment, negligence and a nuisance. Ritter Lumber also asserts that these actions amount to a breach of its coal lease and waste by Island Creek. It asserts that these actions also amount to a breach of its CBM lease by Island Creek and CNX and a breach of the reasonably prudent operator duty by Consol. Ritter Lumber seeks injunctive relief against Consolidation and monetary damages against Consolidation, Island Creek, CNX and Consol.

## II. Analysis

The Motions seek dismissal of the Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) or seek a more definite statement from Ritter Lumber under Rule 12(e). Specifically, the defendants argue that Ritter Lumber's claims must be dismissed because they are time-barred and because they are not sufficiently pled. The defendants also argue that Ritter Lumber's trespass claim must be dismissed because it is not in exclusive possession of the property. They also argue that Ritter Lumber's waste claim must be dismissed because the Complaint alleges that Consolidation has no possessory rights in the property. The defendants also argue that Ritter Lumber's negligence claims are barred by the "economic loss rule." The defendants further argue that Ritter Lumber's breach of contract and breach of duty claims must be dismissed because the defendants have not breached any of their obligations set out in the written contract. The defendants allege that the claim for injunctive relief should be dismissed because Ritter Lumber has an adequate remedy at law. They further argue that the court should dismiss Ritter Lumber's claim for attorney's fees as a matter of law. The Motions also seek to require Ritter Lumber to amend its Complaint to plead facts showing when its alleged causes of action accrued.

The Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the long-used "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007). In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of ... 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. ... Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. ...
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted.)

Generally, a court may not consider matters outside of the pleadings on a motion to dismiss without converting it to a motion for summary judgment. *See* FED. R. CIV. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). The court may, however, consider documents that are attached to or referenced in the complaint. *See Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)).   In this case, the Coal Leases and the CBM Lease are referenced in and attached to the Complaint. Therefore, this court will consider these documents as if their terms were contained in the Complaint. Thus, the court will determine whether the factual allegations set out in the Complaint, supplemented by the Coal Leases and CBM Lease, give rise to a plausible claim for relief. Before the court may determine the plausibility of the claims, however, the court must determine what law controls.

Since this court's jurisdiction is based upon diversity, the court must apply the substantive law of the forum state, including the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This court sits in Virginia. Virginia adheres to the use of traditional rules applicable to conflict of laws. "Under such rules, questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (lex loci)." *Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986). Under Virginia law, issues regarding real estate are governed by the law of the state where the property is

located. *See Mort v. Jones*, 51 S.E. 220, 221 (Va. 1905). Furthermore, under Virginia law, claims for personal injury, including property damage, are governed by the law of the state where the injury occurred. *See Ryder Truck Rental, Inc. v. UTF Carriers, Inc*., 790 F. Supp. 637 (W.D. Va. 1992). "Generally, where a cause of action arises in tort, Virginia applies the law of the state where the tortious conduct or injury occurred." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Jones v. R. S. Jones & Assocs*., 431 S.E.2d 33, 34 (Va. 1993)).

The Complaint alleges that the Coal Leases and the CBM Lease were for the production of minerals attached to property located in Virginia. These leases were to be performed in Virginia.  Also, the real property alleged to have been damaged is located in Virginia. Furthermore, it is alleged that the tortious conduct resulting in injury occurred in Virginia. Therefore, under Virginia conflict of law rules, Virginia substantive law, including Virginia's statutes or periods of limitation, would control. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945) ("the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court");  *Atkins v. Schmutz Mfg. Co.*, 401 F.2d 731, 734 (4th Cir. 1968).

Regarding the timing of its alleged injury, Ritter Lumber's Complaint states only, "Ritter did not know or have reason to know of Consolidation's actions until within the past five (5) years."  The defendants argue that Ritter Lumber's claims must be dismissed as insufficient as a matter of law because the Complaint does not specify the date on which its property was first injured as a result of the defendants' actions. In the alternative, the defendants argue that the court should order Ritter Lumber to provide a more definite statement as to the timing of the

alleged injury or hold that Ritter Lumber's claims are time-barred because they were not filed within five years from the date that water first entered into Ritter Lumber's property in the Beatrice and VP1 mines.

Motions for a more definite statement are disfavored and should be granted only if a defendant cannot frame a response to a complaint. *See Blizzard v. Dalton*, 876 F. Supp. 95, 100 (E.D. Va. 1995) (citing *Hodgson v. Va. Baptist Hosp., Inc*., 482 F.2d 821, 824 (4th Cir. 1973). The Fourth Circuit has held that Federal Rule of Civil Procedure 12(e), which authorizes a party to move for a more definite statement, must be read in conjunction with Rule 8, which establishes general rules for pleadings. *See Hodgson*, 482 F.2d at 822. Rule 12(e) allows the court to order a more definite statement to a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  Rule 8 states:

> …[A] claim for relief must contain:
>
> (1)    a short and plain statement of the grounds for the court's jurisdiction…;
>
> (2)    a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3)    a demand for the relief sought….

FED. R. CIV. P. 8.  The Fourth Circuit has further held that a pleading that can survive a Rule 12(e) motion necessarily is sufficient to survive a motion under Rule 12(b)(6). *See Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 349 n.3 (4th Cir. 2005). The court further stated, "the sufficiency of a complaint does not depend on whether it provides enough information to enable the defendant 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the defendant to respond.'" *Chao*, 414 F.3d at 349

(quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 3rd § 1215 at 193 (2004)).

Also, while Rule 9(f) states, "An allegation of time … is material when testing the sufficiency of a pleading[,]" Fed. R. Civ. P. 9(f), it does not require specificity in pleading time. *See Justice v. The Pantry*, 518 S.E.2d 40, 43 (S.C. 1999); *Supreme Wine Co. v. Distributors of New England, Inc.,* 198 F. Supp. 318, 320 (D. Mass. 1961). Thus, a complaint that omits any allegation as to time is insufficient and subject to dismissal, but a complaint that contains an indefinite allegation of time does not justify dismissal. *See Supreme Wine Co.,* 198 F. Supp. at 320.

Therefore, the question to be considered is whether the Complaint sets out the timing of the defendants' actions with enough specificity to allow the defendants to respond to the allegations. I find that it does. While the Complaint does not provide a specific date on which it is alleged that the defendants began pumping waste water into the Beatrice and VP No. 1 mines, it does generally state that these actions occurred sometime between 1993 and prior to the filing of the Complaint. Although this information may not be sufficient for the defendants to succeed on a statute of limitations defense on the face of the initial pleading, it is sufficient to show that Ritter Lumber's claims had accrued prior to the filing of the action. Furthermore, the statute of limitations is an affirmative defense, *see* Fed R. Civ. P. 8(c)(1), and a plaintiff should not be required to negate an affirmative defense in its complaint. *See LaGrasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Tregenza v. Great Am. Commc'ns. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Therefore, I will recommend that the court deny the Motions

insofar as they seek a more definite statement or to dismiss Ritter Lumber's claims for not pleading the date of injury with more specificity.

The defendants also assert that Ritter Lumber's claims should be dismissed pursuant to Rule 12(b)(6) because they are barred by the statutes of limitations. Under Virginia law, an action based upon a written contract must be filed within five years of accrual. *See* VA. CODE ANN. § 8.01-246(2) (2007 Repl. Vol.). Also, under Virginia law, an action for injury to property must be filed within five years of accrual. *See* VA. CODE ANN. § 8.01-243(B) (2007 Repl. Vol. & Supp. 2011) Furthermore, Virginia law states that a right of action accrues on "the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered...." VA. CODE ANN. § 8.01-230 (2007 Repl. Vol.).

Plaintiff's counsel, however, asserts that the federal "discovery rule," found in 42 U.S.C. § 9658, controls the accrual of its right of action in this case. Section 9658 is part of the Comprehensive Environmental Response, Compensation, and Liability Act, ("CERCLA"), and states:

(a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall

> commence at the federally required commencement date in lieu
> of the date specified in such State statute.

42 U.S.C.A. § 9658(a)(1) (West 2005). Title 42 defines "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages … were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C.A. § 9658(b)(4)(A) (West 2005).  In its Complaint, Ritter Lumber alleges that the water that flooded its mining properties contained pollutants, contaminants and hazardous substances and were "hazardous substances" as defined in CERCLA, 42 U.S.C.A. § 9601(14).

The defendants argue that the federally required commencement date does not apply in this case because plaintiff has not alleged an underlying CERCLA claim. To support their argument, the defendants cite an opinion from the Southern District of Indiana holding that application of the federal discovery rule found in § 9658 is limited to personal injury and property damage causes of action under state law only in "situations where there is an underlying CERCLA action for cleanup and remedial activities." *Knox v. AC&S, Inc.,* 690 F. Supp. 752, 757 (S.D. Ind. 1988).  The court in *Knox* held that the federal discovery rule found in § 9658 did not apply to a wrongful death suit against the decedent's employer for the release of asbestos fibers from asbestos-containing insulation products at the decedent's workplace. 690 F. Supp. at 756-58. The analysis in *Knox* focused on the definition of "release" contained in CERCLA at 42 U.S.C. § 9601(22), which states:

> …"[R]elease" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment….

While the court acknowledged that the statute was broad enough to encompass the release alleged, the court held that such an interpretation would give this particular section a much more expansive effect than the balance of the Act, which was intended to remedy the improper disposal or dumping of hazardous waste materials. *See Knox*, 690 F. Supp. at 756-57.

> This outcome is consistent with the "whole statute" principle of statutory construction, which recognizes that "[a] statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so at to produce a harmonious whole." C. Sands, *Sutherland Statutory Construction* § 46.05 (4th Ed.) (citation omitted). Nothing in the language of the statute indicates that it was intended to have the broad sweeping effect which the plaintiff advances in this case. In fact, the wording of § 9658 and its incorporation of the terms of CERCLA and the CERCLA definition of those terms indicate that the provision was limited to application in the situation where a state cause of action exists in conjunction with a CERCLA cause of action.

*Knox*, 690 F. Supp. at 757-58.

The Fourth Circuit has not addressed the issue, *see First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 867-68 n.8 (4th Cir 1989), but the Ninth Circuit has specifically rejected the holding of *Knox*. *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1149, n.5 (9th Cir. 2002). In *O'Connor,* the Ninth Circuit noted that the plain language of § 9658 does not require any underlying CERCLA remediation action for the application of the federal discovery rule. Instead, under the plain language of the statute, the court held that it applies to "any action brought under state law for personal injuries, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." The Ninth Circuit wrote:

CERCLA does not create a federal statute of limitations. Rather, it retains the state statute of limitations, and establishes a federal standard that governs when delayed discovery of a plaintiff's claims will toll the statute of limitations. This federal standard trumps a less generous state rule that would start the limitations period earlier….

The effect of [§ 9658] is to ensure that if a state statute of limitations provides a commencement date for claims of personal injury resulting from release of contaminants that is earlier than the commencement date defined in § 9658, then plaintiffs benefit from the more generous commencement date.

*O'Connor*, 113 F.3d at 1143-44, 1146. *See also, Barnes v. Koppers, Inc*, 534 F.3d 357, 365 (5th Cir. 2008) ("[W]e conclude that § 9658 operates only where the conditions for CERCLA cleanup are satisfied. This does not mean … that a CERCLA suit must be pending or that the plaintiff's state law injury claims have to be filed in conjunction with a CERCLA suit.") The Ninth Circuit also held that the legislative history of the 1986 amendments, which included § 9658, also supported this interpretation.

The legislative history of the Superfund Amendments and Reauthorization Act of 1986 confirms this result. It indicates that, after receiving recommendations concerning the inadequacy of state laws, Congress fully intended § 9658 to alter the statute of limitations rules applicable to state law claims, regardless of whether plaintiffs also asserted CERCLA claims. *See* H.R.Rep. No. 99-962, 132 Cong. Rec. H9032-04 (1986) (discussing need for liberalization of state statutes of limitations); H.R.Rep. No. 99-253(I) (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2960 (viewing provision as "[s]tate procedural reform" and contemplating that federal rule would apply even in actions brought in state court)….

*O'Connor*, 311 F.3d at 1149. *See also, Tucker v. S. Wood Piedmont Co.,* 28 F.3d 1089, 1091 (11th Cir. 1994) (1986 amendments to CERCLA intended, in part, to address perceived "inadequacy of the laws of some states in dealing with the delayed discovery of the effect of toxic substance pollution").

I agree with the Ninth Circuit's reasoning in *O'Connor* that the plain language of § 9658 makes it applicable in "any action brought under State law for … property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility" regardless of whether an underlying CERCLA action is brought. In this case, Ritter Lumber has brought an action under state law for property damage which it alleges has been caused by waste water containing "pollutants, contaminants and hazardous substances" as defined in CERCLA at 42 U.S.C. § 9601(14). It further alleges that this waste water was a byproduct of Consolidation's mining operations and was intentionally pumped by Consolidation onto its property from the Buchanan No. 1 Mine because Consolidation could not easily dispose of it otherwise. Such facts, if true, would establish a "release" from a "facility" as defined under CERCLA. *See* 42 U.S.C.A. §§ 9601(9) and (22); *see also U.S. v. Iron Mountain Mines, Inc.,* 812 F. Supp. 1528 (E.D. Cal. 1992) (mine is a "facility" under CERCLA).

Furthermore, since Virginia law recognizes that a cause of action for damage to property accrues at the time of the injury or the breach, *see* VA. CODE ANN. § 8.01-230, the Virginia statutes of limitations would provide a commencement date which would be earlier than that provided for by the federally required commencement date. *See* 42 U.S.C.A. § 9658. Therefore, I find that the "the federally required commencement date" should be applied in this case. That being

Case 1:11-cv-00019-JPJ-PMS   Document 24   Filed 08/25/11   Page 16 of 28   Pageid#: 866

so, the statute of limitations would not begin running until Ritter Lumber "knew (or reasonably should have known) that the … property damages … were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C.A. § 9658. In its Complaint, Ritter Lumber alleges that it did not know or have reason to know of Consolidation's action until within the five years prior to the filing of the Complaint. If that is the case, Ritter Lumber's claims would have been filed within the applicable five-year Virginia statute of limitations, as extended by the federal discovery rule. Therefore, I will recommend that the court deny the Motions insofar as they seek to dismiss Ritter Lumber's claims as time-barred.

The defendants also argue that Ritter Lumber's trespass claim against Consolidation must be dismissed as a matter of law because the Complaint admits that Ritter Lumber was not in exclusive possession of the property. *See Hannan v. Dusch*, 153 S.E. 824, 831 (Va. 1930) (right of action for injury to the possession during the term of the lease belongs exclusively to the lessee). Any physical entry upon land constitutes a trespass "whether the entry is 'a walking upon it, flooding it with water, casting objects upon it, or otherwise.'" *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994) (quoting W. Page Keeton et al., PROSSER AND KEETON ON THE LAW OF TORTS § 13, at 70 (5th ed. 1984)). "[A] trespass is an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." 5 RICHARD R. POWELL, THE LAW OF REAL PROPERTY ¶ 707 (Patrick J. Rohan ed., 1994). "Thus, in order to maintain a cause of action for trespass to land, the plaintiff must have had possession of the land, either actual or constructive, at the time the trespass was committed." *Cooper*, 448 S.E.2d at 406 (quoting *Blackford v. Rogers*, 23 S.E. 896, 897 (Va. 1896)).

Plaintiff's counsel points out that this very argument was considered and rejected by the Virginia Supreme Court in *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44 (Va. 2008). In that case, Levisa Coal sued Consolidation over the discharge of waters from the Buchanan No. 1 Mine into the idled VP3 Mine. Consolidation argued that the water was being released only into the voids, tunnels and shafts created by Island Creek Coal's leasehold with Levisa Coal and was, thus, in an area over which Levisa Coal had no possessory interest. *Levisa Coal Co.*, 662 S.E.2d at 48. The court found "no merit to Consolidation Coal's contention that Levisa Coal lack[ed] standing" based on the evidence below that Levisa Coal retained ownership rights in the unmined coal, other minerals and in the CBM and other gas deposits. *Levisa Coal Co.*, 662 S.E.2d at 52.

In this case, the Coal Leases state that Ritter Lumber retains ownership and control of all leased premises. The Coal Leases also give Ritter Lumber retained rights in the unmined coal, the CBM and other minerals. That being the case, I find that under *Levisa Coal Co,* 662 S.E.2d 44, Ritter Lumber retains a possessory interest in the property that may be protected by a trespass claim. Therefore, I will recommend that the court deny the Motions insofar as they seek to dismiss Ritter Lumber's trespass claim.

The defendants also argue that Ritter Lumber's waste claim against Consolidation must be dismissed as a matter of law because the Complaint alleges that Consolidation has no possessory rights in the property. Waste by its very definition is "[a]n abuse or destructive use of property by one in rightful possession." BLACK'S LAW DICTIONARY 1425 (5th ed. 1979). Ritter Lumber concedes that it can prevail on its waste claim only if it is shown that Consolidation has a possessory interest in the Beatrice and VP1 tracts. Ritter Lumber also

concedes that it has alleged in its Complaint that Consolidation has no right, title or interest to the Beatrice and VP1 tracts. Nonetheless, Ritter Lumber states that it pled the waste claim against Consolidation because, in other litigation, Consolidation has asserted that it was a co-tenant and had a possessory interest in these tracts.

As stated above, the focus in deciding motions to dismiss has moved away from allowing all possible claims to remain to ensuring that only plausible claims survive. *See Iqbal*, 129 S.Ct. 1949-50; *Twombly*, 550 U.S. at 555-63. At this stage, this court must make its decision on the Motions based on the facts as pled by Ritter Lumber. That being the case, I will recommend that the Motions be granted and that Count II of the Complaint be dismissed for failing to state a claim for waste against Consolidation.

The defendants also argue that Ritter Lumber's negligence and nuisance claims against Consolidation must be dismissed as a matter of law because they are barred by the "economic loss rule." At common law, privity between the parties was required before a party could recover from another for negligence. *See Blake Const. Co., Inc. v. Alley*, 353 S.E.2d 724 (Va. 1987). While Virginia Code § 8.01-223 eliminated the requirement of privity in negligence actions for damages for injuries to persons or property, the Supreme Court of Virginia has held that this statute did not eliminate the common law requirement of privity in a negligence claim seeking recovery of economic loss. *See Blake Const. Co.*, 353 S.E.2d at 727. Thus, the "economic loss rule" prevents recovery of economic losses based on negligence from a party who was not in privity with the plaintiff. The Supreme Court of Virginia, however, has never decided whether a plaintiff may recover

economic losses based on a claim of nuisance. *See Pruitt v. Allied Chem. Corp.*, 523 F. Supp. 975, 982 (E.D. Va. 1981).

The defendants argue that Ritter Lumber's claims in Counts IV and V must be dismissed because they seek the recovery of only economic losses based on the alleged negligence of Consolidation, and there is no privity between Ritter Lumber and Consolidation. The defendants base this argument on the fact that both Counts IV and V seek $16.75 million in damages. The defendants argue that this amount is equal to the sum of the amounts of coal and CBM royalties Ritter Lumber claimed in the Complaint that it has lost as a result of Consolidation's actions. Therefore, the defendants argue, these two claims are seeking recovery for Ritter Lumber's lost royalties, which are economic losses.

Count IV purports to state a claim for negligence against Consolidation. Count V purports to state a claim for nuisance against Consolidation. While both counts seek $16.75 million in damages from Consolidation, neither claim specifically states that this amount is for lost coal and CBM royalties. Count IV seeks compensatory damages because, it alleges, Ritter Lumber's "property interests have been damaged" by Consolidation's negligent actions. Count V seeks compensatory damages because Consolidation's actions have obstructed or interfered with Ritter Lumber's "reasonable use of its property."

To prove a claim for negligence under Virginia law, a plaintiff must show a legal duty, breach of that duty by the defendant and a resulting injury. *See Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988). To prove a claim for nuisance under Virginia law, a plaintiff must show that the defendant's actions obstruct the reasonable use and enjoyment of the plaintiff's

property. *See Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 665 (Va. 1992). Furthermore, under Virginia law, it is immaterial whether the acts constituting a nuisance were done negligently. *See G. L. Webster Co. v. Steelman*, 1 S.E.2d 305, 311 (Va. 1939). Thus, it appears that Ritter Lumber has pled facts sufficient to state causes of action for negligence and nuisance against Consolidation, and I will recommend the Court deny the Motions insofar as they seek dismissal of these claims.

The defendants further argue that Ritter Lumber's breach of the CBM Lease and related duties claim against Island Creek and CNX, (Count IX), and breach of operator's duties claim against Consol, (Count X), must be dismissed for failing to state claims. In particular, the defendants argue that Ritter Lumber's breach of the CBM Lease and related duties claim should be dismissed because the defendants did not breach any duty provided for by the CBM Lease. With regard to the breach of operator's duties claim, the defendants argue that this claim should be dismissed because Virginia law does not recognize an independent action for breach of an implied duty.

In Count IX, Ritter Lumber alleges that, under the CBM Lease, Island Creek and, then, CNX had a duty to act as "reasonably prudent operators" and to perform their duties under the CBM Lease "in good faith, fairly." Ritter Lumber further alleges that under the CBM Lease, Island Creek and CNX had a duty to not allow others to injure or impede the gas and coal interest. Ritter Lumber alleges that the action of Island Creek and CNX in allowing Consolidated to flood the Beatrice and VP1 Mine voids breached these duties. The defendants argue that no such duties are contained in the CBM Lease.

A review of the CBM Lease reveals that it contains no express duties of good faith or fair dealing. Nor does it contain any express duty on behalf of the lessee to act as a reasonably prudent operator. While the Supreme Court of Virginia has not specifically addressed this issue, I have recently held that Virginia courts would recognize an implied duty to act as a reasonably prudent operator. *See Healy v. Chesapeake Appalachia, LLC, et al.,* 2011 WL 24261, at *14-16 (W.D. Va. Jan. 5, 2011). I will not repeat the analysis that led to that conclusion in this report, except to reiterate that several jurisdictions recognize this implied duty to act as a reasonably prudent operator. *See S. Gas Producing Co. v. Seale*, 191 So. 2d 115, 119 (Miss. 1966) ("great majority of jurisdictions, including Mississippi, apply the 'prudent operator' standard"); *see also* 38 AM. JUR. 2d *Gas And Oil* § 91 (2010). Furthermore, "[e]very claim of improper operation by a lessor against a lessee should be tested against the general duty of the lessee to conduct operations as a reasonably prudent operator in order to carry out the purposes of the oil and gas lease." *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 568 (Tex. 1981); *see Smith v. Amoco Prod. Co.*, 31 P.3d 255, 272 (Kan. 2001) (oil and gas lessee has "duty to act at all times as a reasonably prudent operator"); *S. Gas Producing Co.*, 191 So.2d at 119. Thus, I find that Ritter Lumber has pled facts sufficient in Count IX to state a cause of action against Island Creek and CNX for breach of contract based on the implied duty to act as a reasonably prudent operator, and I will recommend the court deny the Motions insofar as they seek dismissal of these claims.

In Count X, Ritter Lumber alleges that Island Creek allowed Consol to conduct the gas operations covered by the CBM Lease. Ritter Lumber alleges that Consol, as gas operator, owed it the duty to perform its operator's duties with due regard and care to protect Ritter Lumber's property, the duty not to allow others to

injure or impede Ritter Lumber's gas interests and the duty not to allow injury to Ritter Lumber's coal interests. Ritter Lumber claims that Consol negligently or intentionally breached these duties by allowing Consolidation to flood the Beatrice and VP1 Mine voids.

Ritter Lumber concedes that it has no CBM Lease or other form of privity with Consol. Therefore, Ritter Lumber concedes that it cannot pursue a breach of contract claim against Consol. Thus, it appears that Count X attempts to assert a tort claim based on negligence against Consol. As stated above, to prove a claim for negligence under Virginia law, a plaintiff must show a legal duty, breach of that duty by the defendant and a resulting injury. *See Chesapeake & Potomac Tel. Co. of Va.*, 365 S.E.2d at 754. Thus, the court must determine what, if any, legal duty Consol owed Ritter Lumber. Again, Ritter Lumber concedes that Consol owed it no contractual duties. Instead, Ritter Lumber argues that the court's decision in *Hale v. CNX Gas Co.*, Case No. 1:10cv00059, (W.D. Va. Jan. 21, 2011), recognized an independent tort claim for breach of an implied duty to act as a reasonably prudent operator. There is, however, one very important distinction between the facts of the *Hale* case and this case. The *Hale* case involved a forced-pooled, deemed-leased CBM owner. In *Hale*, the parties recognized that the Virginia Gas and Oil Act and the orders of the Virginia Gas and Oil Board imposed certain legal duties upon the CBM well operator, CNX. The court in *Hale* found that these duties included an implied duty to act as a reasonably prudent operator. In this case, Ritter Lumber has alleged no facts that establish that Consol owed it a legal duty. That being the case, I will recommend that the court grant the Motion and dismiss Count X.

Case 1:11-cv-00019-JPJ-PMS   Document 24   Filed 08/25/11   Page 23 of 28   Pageid#: 873

The defendants also argue that Ritter Lumber's claim for injunctive relief should be dismissed because it has an adequate remedy at law. In its Complaint, Ritter Lumber asks for injunctive relief in the alternative only if the monetary damages awarded to it do not fully compensate it for "both past dumping and future storage of waste." Complaint at 20-22. The defendants claim that, by so arguing, Ritter Lumber concedes that it could be made whole by the awarding of monetary damages. If that is the case, defendants argue, injunctive relief is inappropriate. *See Levisa Coal Co.*, 662 S.E.2d at 53-54 (lack of adequate remedy at law necessary for injunctive relief). Under Virginia law, however, damage to real property is deemed irreparable. *See Levisa Coal Co.*, 662 S.E.2d at 54. Thus, the Supreme Court of Virginia has held that an injunction may issue to protect a landowner from an intrusion of noxious effluent onto his land even though monetary damages to the land were quantifiable. *See Blue Ridge Poulty & Egg Co. v. Clark*, 176 S.E.2d 323 (Va. 1970). While in the end, entry of an injunction may not be appropriate in this case, *see Levisa Coal Co.*, 662 S.E.2d at 54 (citing *Mobley v. Saponi Corp.*, 212 S.E.2d 287, 290 (Va. 1975); *Akers v. Mathieson Alkali Works*, 144 S.E. 492, 494 (Va. 1928)), it appears that the request for injunctive relief has been properly pled. Therefore, I will recommend that the court deny the Motion insofar as it seeks to dismiss Count VIII.

The defendants further argue that the court should dismiss Ritter Lumber's claim for attorney's fees as a matter of law. Virginia law strictly adheres to the "American Rule," which does not allow for the recovery of attorney's fees in the absence of specific contractual or statutory provision to the contrary. *See Ryder v. Petrea*, 416 S.E.2d 686, 688 (Va. 1992) (quoting *Lannon v. Lee Conner Realty Corp.*, 385 S.E.2d 380, 383 (Va. 1989)). Furthermore, Ritter Lumber does not

contest the defendants' argument on this point. I will, therefore, recommend that the court dismiss Ritter Lumber's claim for attorney's fees.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Virginia substantive law, including Virginia's statutes or periods of limitation, control in this case;

2. The Complaint sets out the timing of the defendants' actions with enough specificity to allow the defendants to respond to the allegations;

3. The court should deny the Motions insofar as they seek a more definite statement or to dismiss Ritter Lumber's claims for not pleading the date of injury with more specificity;

4. Virginia law recognizes that a cause of action accrues at the time of the injury to property or the breach of contract;

5. Virginia law provides a commencement date which would be earlier than that provided for by the federally required commencement date, found at 42 U.S.C. § 9658;

6. The federally required commencement date should be applied in this case because Ritter Lumber has pled an action under state law for property damages which were caused by exposure to a hazardous substance, pollutant or contaminant, released into the environment from a facility;

7. Under the federally required commencement date, the Virginia limitations period did not begin running until Ritter Lumber knew or reasonably should have known that the property damages were caused or contributed to by the hazardous substance, pollutant or contaminant at issue;

8.  The Complaint alleges that Ritter Lumber did not know or have reason to know of Consolidation's actions until within five years of the filing of the Complaint;

9.  The court should deny the Motions insofar as they seek to dismiss Ritter Lumber's claims as time-barred;

10. Ritter Lumber has pled a possessory interest in property which may be protected by a trespass claim;

11. The court should deny the Motions insofar as they seek to dismiss Ritter Lumber's trespass claim contained in Count I;

12. Ritter Lumber has pled that Consolidation has no right, title or interest in the Beatrice and VP1 tracts;

13. Under Virginia law, a waste claim may be maintained only against one in rightful possession;

14. The court should grant the Motions and dismiss Ritter Lumber's waste claim against Consolidation contained in Count II;

15. Ritter Lumber has pled facts sufficient to state causes of action under Virginia law for negligence and nuisance against Consolidation;

16. The court should deny the Motions insofar as they seek dismissal of  Ritter Lumber's negligence claim in Count IV and nuisance claim in Count V against Consolidation based on the "economic loss rule;"

17. Virginia courts would recognize an implied duty to act as a reasonably prudent operator pursuant to a CBM lease;

18. The court should deny the Motions insofar as they seek dismissal of Ritter Lumber's claim in Count  IX for breach of contact based on an implied duty to act as a reasonably prudent operator against  Island Creek and CNX;

19. The court should grant the Motions insofar as they seek dismissal of Ritter Lumber's negligence claim against Consol in Count X because the Complaint does not allege facts sufficient to show that Consol owed any duty to act as a reasonably prudent operator;

20. The court should deny the Motions insofar as they seek dismissal of Ritter Lumber's request for injunctive relief contained in Count VIII; and

21. The court should grant the Motions and dismiss Ritter Lumber's claim for attorney's fees.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motions in part and deny the Motions in part.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion

of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 25th day of August, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE